
    
         1  THE PEOPLE OF THE STATE OF COLORADO Complainant:  v.  KRISTIN MARIE MUSCATO, #47850 Respondent: No. 24PDJ047Office of the Presiding Disciplinary Judge of the Supreme Court of ColoradoJuly 30, 2024
  The Presiding Disciplinary Judge issued an opinion and approved the parties' stipulation to discipline, publicly censuring Kristin Marie Muscato (attorney registration number 47850). The public censure is effective July 30, 2024. 
  While representing two clients at the time she engaged in misconduct underlying a separate disciplinary suspension, Muscato failed to act with reasonable diligence, failed to adequately communicate with her clients about the status of the matters, and failed to obey court orders. In one of those matters, she also failed to communicate the basis or rate of her fee in writing. Muscato's misconduct in the two client representations was similar to, and contemporaneous in time with, misconduct in another disciplinary case and was largely driven by the same personal circumstances that mitigated her misconduct in that matter. 
  Through this conduct, Muscato violated Colo. RPC 1.3 (a lawyer must act with reasonable diligence); Colo. RPC 1.4(a)(3) (a lawyer must keep the client reasonably informed about the status of the matter); Colo. RPC 1.5(b) (a lawyer must communicate the basis or rate of fee in writing); and Colo. RPC 3.4(c) (a lawyer must not knowingly disobey a court order). 
  The case file is public per C.R.C.P. 242.41(a). Please see the full opinion below. 
 2
  OPINION APPROVING STIPULATION TO DISCIPLINE UNDER C.R.C.P. 242.19(C) 
  BRYON M. LARGE PRESIDING DISCIPLINARY JUDGE 
  Before the Presiding Disciplinary Judge ("the Court") is a "Stipulation to Discipline Pursuant to C.R.C.P. 242.19" filed on June 3, 2024, by Jacob M. Vos, Office of Attorney Regulation Counsel ("the People"), and Kristin Marie Muscato ("Respondent"). On June 28, 2024, the Court held a hearing on the stipulation, during which it invited further briefing. On July 16, 2024, the People filed a "Brief in Support of the Parties' Stipulation." 
  I. CASE NUMBER 23PDJ057 
  On October 23, 2023, in case number 23PDJ057, this Court approved a stipulation suspending Respondent for six months, all to be stayed pending her successful completion of a two-year probation with conditions. Respondent was sanctioned for misconduct that violated Colo. RPC 1.3, Colo. RPC 1.4(a)(3)-(4), Colo. RPC 1.15A(a), Colo. RPC 1.15D, Colo. RPC 1.16(d), and Colo. RPC 8.4(c). Since the time that the Court approved that stipulation, the People were alerted to and investigated Respondent's conduct in two other matters-the A.C. matter and the M.W. matter-that occurred around the same time of her conduct underlying case number 23PDJ057. 
  II. THE PARTIES' STIPULATION[1] 
  A.C. Matter 
  In November 2022, A.C. hired Respondent to represent her in an allocation of parental responsibilities matter in Weld County. A.C. paid Respondent a $3,500.00 retainer, to be billed 
 3
  against hourly. The matter was set for an initial status conference on December 22, 2022. On that date, however, the court presiding in that matter closed due to inclement weather. The court ordered Respondent to reset the matter within fourteen days or submit a status report. Respondent did neither. 
  On April 27, 2023, the court issued a delay prevention notice and order. At the time, A.C.'s former spouse had not filed a response to A.C.'s petition, and neither party had yet filed the required financial disclosures. The court cautioned that failure to set an initial status conference would result in dismissal for failure to prosecute. Respondent set the initial status conference, as ordered. 
  On May 26, 2023, for the first time since the representation began six months prior, Respondent sent A.C. an invoice for her services. In early June 2023, A.C. asked Respondent for a refund and terminated the representation. Respondent refused to issue a refund, asserting that she had earned the full retainer. 
  M.W. Matter 
  On June 1, 2022, M.W. filed a pro se motion against S.N. concerning parenting time disputes. The court in that matter entered a contempt citation against S.N. On June 24, 2022, M.W. hired Respondent to represent him, paying a $3,500.00 retainer. Respondent provided neither a basis nor a rate of her fee in writing to M.W. Nor did she specify the scope of the representation. 
  On August 28, 2022, the court granted S.N.'s motion to restrict M.W.'s parenting time. On October 12, 2022, the court appointed a child and family investigator and ordered that a report be filed within 160 days. 
  On December 2, 2022, Respondent's office messaged M.W., stating that Respondent's son, who had been hospitalized for most of the prior month, had recently been readmitted. In mid-December 2022, M.W. requested an itemized invoice. Respondent replied on the same date, promising to call M.W. Respondent also admitted that she was behind on billing and vowed to get M.W. an invoice soon, but she also advised M.W. that his account balance was in the negative. Respondent sent M.W. a request for payment through her case management system but did not send an itemized invoice, as she believed their call obviated the need for an itemized invoice. 
  On March 7, 2023, the court held a hearing to address parenting time restrictions and disputes. On March 12, 2023, the court issued a written order awarding attorney's fees and costs to M.W. Two days later, the court ordered Respondent to file an affidavit of attorney's fees and costs by April 4, 2023, and it notified the parties that failure to do so would result in the issue being deemed abandoned. 
 4
  Around March 21, 2023, Respondent was hospitalized for twenty-one days due to sepsis. Respondent's office timely notified M.W. of her hospitalization. But Respondent failed to file the affidavit of attorney's fees and costs by the deadline of April 4, 2023. Respondent was released from the hospital on April 8, 2023. 
  On April 19, 2023, the parties appeared in court. Respondent orally moved for an extension of time to file the affidavit of attorney's fees and costs. The court denied the motion but invited Respondent to file a motion under C.R.C.P. 60. Respondent did not file such a motion. 
  On May 19, 2023, the court held a permanent orders hearing and entered various orders. The court also ordered Respondent to file a proposed order of sanctions within fourteen days. 
  On May 27, 2023, Respondent informed M.W. that she had waived $3,125.00 in fees, which represented the awarded amount for which she had failed to file a fee affidavit. Respondent advised M.W. to review the online case management portal and pay the remaining balance shown in the invoice right away. This was the first invoice Respondent issued to M.W., even though the representation began in June 2022, nearly one year earlier. That invoice reflected M.W. had paid a total of $11,300.00 and had an outstanding balance of $8,417.75. M.W. replied, stating he would pay Respondent $800.00 after she submitted the proposed sanctions order. At the time, M.W. operated under the belief that Respondent only needed $800.00 to complete the case and that he would owe no money thereafter. 
  On June 2, 2023, the date the proposed sanctions order was due, M.W. texted Respondent to inquire if she was going to meet the court's deadline, which was quickly approaching. Respondent replied that if the document were filed by 11:59 p.m., it would be timely. Respondent also inquired about payment. She offered to remove the entire amount for the contempt matter but required M.W. to pay the overdue balance. Respondent then filed the proposed sanctions order. On June 16, 2023, M.W. terminated Respondent. 
  Respondent's invoice dated May 27, 2023, remains outstanding. While Respondent accurately tracked M.W.'s deposits into her trust account, she failed to accurately track her withdrawals related to M.W.'s matter. Respondent is unable to produce any relevant accounting records regarding those withdrawals. 
  The Parties' Sanctions Analysis 
  The parties stipulate that Respondent's conduct in the A.C. and M.W. matters violated Colo. RPC 1.3 (a lawyer must act with reasonable diligence); Colo. RPC 1.4(a)(3) (a lawyer must keep the client reasonably informed about the status of the matter); Colo. RPC 1.5(b) (a lawyer must communicate the basis or rate of the lawyer's fee in writing); and Colo. RPC 3.4(c) (a lawyer must not knowingly disobey a court order). 
 5
  The parties agree that Respondent violated her duty to communicate, her duty to comply with court orders, her duty to maintain required trust account records, and her duty to provide her client with a written basis for the fee; that she did so recklessly; and that she harmed her relationships with clients and impeded the courts from functioning efficiently. 
  To establish a presumptive sanction for Respondent's admitted misconduct, the parties look to ABA Standard 4.43 of the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards"),[2] which calls for public censure when a lawyer negligently fails to act with reasonable diligence in representing a client, thereby injuring or potentially injuring a client. The parties also rely on ABA Standard 6.23, which provides that public censure is generally appropriate when a lawyer negligently fails to comply with a court order or rule, thereby injuring or potentially injuring a client or interfering or potentially interfering with a legal proceeding. The parties agree that three aggravating factors under ABA Standard 9.22 should apply, including Standard 9.22(a) for prior disciplinary offenses, which they agree should be afforded moderate weight; Standard 9.22(c) for a pattern of misconduct, which they agree should be given moderate weight; and Standard 9.22(d) for multiple offenses, which they agree warrants average weight. The parties also agree that three mitigating factors under ABA Standard 9.32 should apply: Standard 9.32(b) for Respondent's absence of a dishonest or selfish motive, which the parties agree should carry average weight; Standard 9.32(c) for Respondent's personal or emotional problems, which they agree should be afforded significant weight; and Standard 9.32(e) for Respondent's cooperative attitude toward proceedings, which the parties agree should be given average mitigating credit. Based on these elements, the parties ask the Court to publicly censure Respondent. 
  The parties also observe that Respondent's misconduct in the A.C. and M.W. matters occurred in the same timeframe as her misconduct in case number 23PDJ057, that it implicates similar rules, and that it was largely driven by the same family health crises that contributed to the misconduct in the earlier case. They argue that if the People had known about the A.C. and M.W. matters at the time they investigated case number 23PDJ057, the parties likely would have resolved them through a global resolution in that case for a six-month stayed suspension. The parties contend that the public censure here thus serves to notify the public of Respondent's additional misconduct while the stayed suspension and probationary terms in case number 23PDJ057 adequately address that misconduct. 
  III. ANALYSIS 
  The Court begins its analysis by noting its authority to exercise discretion in rejecting or approving stipulations in accordance with the considerations governing imposition of disciplinary sanctions.[3] Indeed, the Colorado Supreme Court has granted this Court wide 
 6
  discretion and flexibility in assigning sanctions when adjudicating lawyer misconduct.[4] When reviewing stipulations, the Court endeavors to honor parties' agreements and is favorably inclined to accept targeted and proportionate agreements that protect the public and promote confidence in the legal profession. 
  The parties agree that the Court should impose public censure, leaning heavily on ABA Standards 4.43 and 6.23. But those Standards apply only when a lawyer acts with a negligent mental state. Here, however, the parties agree that Respondent acted with a reckless mental state, which, for purposes of applying the ABA Standards, equates to a knowing mental state.[5]As such, a proper analysis must begin with ABA Standard 4.42(a), which provides for suspension when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, as well as ABA Standard 6.22, which provides for suspension when a lawyer knows that she is violating a court order and causes injury or potential injury to a client or causes interference or potential interference with a legal proceeding. Under these Standards, suspension, not public censure, is the appropriate baseline for a sanctions analysis. 
  The parties' alternative argument for public censure is better grounded legally and equitably. The parties argue that if the People had been aware of Respondent's misconduct in the A.C. and M.W. matters during their investigation in case number 23PDJ057, the misconduct here would have been included in a global resolution. They argue that the probationary conditions in that case adequately address the misconduct at issue here. And they stress that public censure both protects the public by putting it on notice of this misconduct and avoids imposing needless additional conditions that serve no regulatory objective. 
  In reviewing case number 23PDJ057 as well as the stipulated facts here, the Court agrees with the parties that it would likely have approved the stipulation in case number 23PDJ057 with similar terms even if these two matters were included. The Court also agrees with the parties that an additional period of suspension or supplemental probation requirements would serve no practical purpose in this circumstance. And the Court agrees that public censure puts the public on notice of Respondent's misconduct. In short, the parties' equitable resolution satisfies the interests of justice. 
  Though this case bears an uncommon posture, the Court is aware of other cases that offer guidance in this matter. In People v. Rodriguez, the Colorado Supreme Court declined to impose a six-month reciprocal suspension where the lawyer, whose license was suspended for ninety days, had already served over two years without seeking reinstatement.[6] Because the Rodriguez court found that no good purpose would be served by imposing an additional period 
 7
  of suspension, it instead publicly censured the lawyer.[7] In People v. Cain, the Colorado Supreme Court publicly censured a suspended lawyer after the lawyer engaged in the unauthorized practice of law during his suspension.[8] The lawyer had never reinstated from a ninety-day suspension, resulting in an actual period of suspension of nearly eight years.[9] Though the lawyer's misconduct ordinarily warranted suspension, the Cain court publicly censured the lawyer, determining that an additional period of suspension was unnecessary because the lawyer was already required to pass the bar examination before petitioning to reinstate from his suspension.[10] Finally, in People v. Field, a lawyer was publicly censured for misconduct that occurred during the same period as other misconduct underlying the lawyer's prior six-month suspension.[11] The Colorado Supreme Court held, "If the misconduct in this case had occurred after Field had been disciplined with the suspension, we would reject a public censure as too lenient."[12] 
  Thus, in accordance with this precedent and in the Court's favorable exercise of discretion, the Court concludes that public censure is an appropriate resolution in this limited circumstance. The Court therefore APPROVES the stipulation. 
  --------- 
  Notes: 
  [1] The parties stipulate to the facts recited in this section. 
  [2] Found in ABA Annotated Standards for Imposing Lawyer Sanctions (2d ed. 2019). 
  [3] C.R.C.P. 242.19(c). 
  [4] In re Att'y F., 2012 CO 57, ¶ 19. 
  [5] See In re Att'y C., 47 P.3d 1167, 1173 n.11 (Colo. 2002) ("With one exception-misappropriation of client funds-we have equated 'reckless' and 'knowing' conduct for analyzing the appropriate sanction.") (citing People v. Small, 962 P.2d 258, 260 (Colo.1998)). 
  [6] 937 P.2d 1210, 1211 (Colo. 1997). 
  [7] Id. 
  [8] 957 P.2d 346, 347 (Colo. 1998). 
  [9] Id. 
  [10] Id. 
  [11] 967 P.2d 1035, 1036-37 (Colo. 1998). 
  [12] Id. at 1037 (emphasis in original). 
  --------- 
 
    
